Thank you. Our final case for argument this morning is Marling v. Brown. Good morning, Your Honors. Tyler Banks, Counsel for Respondent, and may it please the Court. Because the Indiana Court of Appeals reasonably concluded that Marling failed to meet his burden to prove ineffectiveness in post-conviction proceedings, the District Court erred in granting habeas relief. The State Court's decision did not rest on an unreasonable factual determination. Therefore, this Court should apply Section 2254's deference to the State Court's opinion. But with or without deference, Marling's trial counsel was not ineffective when he argued that the officer was not allowed to open the lockbox with a screwdriver and that this assertion was not in conformity with the Police Department's policy. This Court should reverse the grant of habeas relief. In State Court, Mr. Marling had the burden of proving that his counsel was ineffective, and in doing so, he admitted almost no evidence. He did not provide testimony from the officer who opened the box. He did not call his trial counsel to explain what investigation or research he had done into the relevant law and facts. He himself did not testify about the state of the box. Rather, he entirely relied on what he thought was a winning legal argument. And in the face of this near absence of evidence, the Indiana Court of Appeals correctly held that Marling had not overcome the burden to prove counsel's ineffectiveness. That Court recognized that counsel did argue that the officer could not open the lockbox with a screwdriver, and it merely held that Marling had not met his burden under Strickland. And that is all that the Court of Appeals' opinion stood for. And because this was neither an unreasonable application of Strickland, nor based on an unreasonable factual determination, deference to the State Court is required. But when the District Court shed itself of deference, it attributed a factual determination to the Indiana Court of Appeals that that Court never actually made. The Indiana Court of Appeals never said that it was finding that the box was not actually damaged. In every reference to the term actual damage in the Court's opinion, it was usually couched or always couched in sentences that were rephrasing the issue or recharacterizing Mr. Marling's argument in the state post-conviction appeal. At no point did it conclude that the box was not actually damaged. Therefore, the District Court's attribution of the Court of Appeals making that holding was incorrect, and deference under Section 2254 should apply. But deference aside, counsel was not ineffective here. While Mr. Marling and the District Court characterized this case as one in which counsel completely failed to raise an issue, they are incorrect. Here, counsel raised a Fourth Amendment challenge. In motion to suppress, he argued that the search was—er, he argued that the impoundment was not in keeping with established North Vernon Police Department policy, showing that counsel was aware of the policy, and also argued that the officer was not permitted to open the box with a screwdriver. So the issue that Mr. Marling criticized as counsel for not making was raised and available for the trial court to rule upon it. The trial court just simply disagreed with Mr. Marling's position, which does not show deficiency or prejudice. But even had counsel used the unreasonable potential damage language in the trial court, that argument would not have had a reasonable probability of success. If the policy forbade actions that could cause unreasonable potential damage, it's hard to imagine an action less intrusive than using a common household tool to pry apart a hinge from a locking mechanism. The question is not one of actual damage, it is whether the officer would foresee an unreasonable risk of potential damage from the means used, and I would submit that this case typifies an action that would be a reasonable risk of damage. And Mr. Marling's argument basically relies on a single photograph, but that photograph is inconclusive as to the question of what the officer would have foreseen when he took the action that he took. Your Honors, if there are no further questions, I'll reserve my remaining time for rebuttal. I have a question for you, Mr. Banks. It's Judge Scudder. Suppose we're inclined to take a look at the photograph. I think your description of what the state habeas court did is accurate in that they pretty clearly said that Mr. Marling did not point to any evidence to show that the box was damaged. But suppose we're inclined to look at the photograph. I've looked at it several times. I think it's pretty plain that the hinge is bent. Does that make any difference at all? I do not disagree with that characterization, Your Honor. I think the photograph shows a hinge that is bent and askew. What I don't think that does is make it – I don't believe that it's dispositive on the question of whether the officer would have foreseen unreasonable potential damage. The district court went even further here. The district court not only said, hey, this is actually damaged, but it's likely inoperable. There's no evidence in the record that this box was inoperable or, I think importantly, unable to be repaired. To the extent that the hinge is dented, I'm not sure. It could have been reparable. But a single photograph, even if it shows the actual damage that Mr. Marling claims, doesn't answer the question of the unreasonable potential damage. Thank you, Your Honor. I will reserve my remaining time. Thank you, Mr. Banks. Ms. Jones. Good morning, Your Honors, and may it please the Court. My name is Brittany Jones, and I'm here today on behalf of Petitioner Appellee Raymond Marling. Because Mr. Marling's appointed attorneys failed to present his most persuasive suppression argument to the state court, he now faces an additional 33 years in state prison. That's 33 years longer than Mr. Marling would have otherwise spent in state custody absent his attorney's mistake. The failure to present this meritorious suppression argument could not have been justified as a matter of strategy, because there is no strategy in presenting a series of weaker suppression arguments while withholding the strongest argument in your arsenal. As the district court in this case concluded, Mr. Marling's attorneys rendered constitutionally sufficient counsel in violation of the statute. Ms. Jones. Ms. Jones. Yes. This is Judge Easterbrook. Let me tell you the problem I have with that argument. The state court has already told us that if the lawyer had presented the argument, it would have lost. The district court, the federal district judge, thinks that the state court should have ruled otherwise. But the state court is certainly entitled to be taken at its word as saying, had it been presented, it would have lost. Have we ever said that a lawyer was ineffective for not presenting a losing argument? No, Your Honor. I don't think the attorney would have been ineffective if he had presented a losing argument. But the state court's opinion here rests on twin unreasonable factual determinations. Counsel, I wish you'd deal with my question on its own premises. The federal district court believed that the state court was wrong, believed that the state court should have said this was a winning argument. Look at the picture. Right. And we know the picture wasn't presented. But the state court, in fact, said this is a losing argument. So we've got two layers here. One is whether the argument would have won in state court. And the state court said no. The second layer is whether the state court should have said yes. The question I'm asking is whether it is appropriate to hold counsel ineffective for making an argument that the state court has authoritatively told us it believed was a loser. Your Honor, the reason that the state court concluded that the argument was a loser is because it misunderstood the record. Look, counsel, I am well aware of that. I am well aware of the district court's view of that. I wish you would address the question I asked. Your Honor, we don't take issue with the state court's application of Strickland. It isn't a 2254 D1 case. And I think the reason why the state or, excuse me, the district court in this case analyzed the question de novo is because of these unreasonable factual determinations. So I think you have to sort of separate the two questions. First, whether the state court's decision to say yes or no. I'm going to ask this one more time. It is not an unreasonable finding of fact for a state court to say if this argument had been presented to us earlier, it would have lost. That seems to me to be an authoritative decision by the state tribunal about what it would have done. The district court believed that the state judges made a mistake of fact on the way to that conclusion. But that doesn't undermine the statement that here is what we would have done in fact. The question I am asking is, how does Strickland apply when we know for a fact that the argument was a loser so far as the state court is concerned, even though the federal judge thinks it should have been a winner? Your Honor, I think we don't know that the argument here was a loser if the state court had properly understood the factual predicates to the case. You're just rejecting the premise of my question, counsel. That's why I said I wish you would address the question I asked rather than some other question. Your Honor, I think I agree with you that if we had an authoritative decision from the state court that properly analyzed the facts of the case and came to a legal conclusion, we would be in a different situation. But that's not the case that this court has before it today. And the reason why AEDPA separates out both unreasonable legal determinations and unreasonable factual determinations is because the state court should not be entitled to deference on its legal conclusion where it rests on an unreasonable factual premise. And that's why this case has been litigated under 2254 D2, because it's really the factual premises of the state court's decision that are unreasonable in this case and that require this court to take a fresh look at the underlying legal questions under Strickland. And that's precisely what the district court did in this case. I'd also like to address- Ms. Jones, this is Judge Ripple. What exactly was the argument made by defense counsel in the state court? There seems to be a disagreement between you and counsel for the state on that issue, and I'd like to hear your rendition of precisely what argument was made. Sure, and I do think it's a bit convoluted, but my best understanding of the argument that both Mr. Marling's trial and appellate attorneys made was that whether or not the inventory policy urged the officers to conduct the search in the way that they did, that the search was independently unreasonable because there was no exigency or other law enforcement purpose to backing up the search. And that, we believe, is actually quite a misunderstanding of the inventory search exception. And I think primarily the attorneys were arguing under the Indiana State Constitution as opposed to the Fourth Amendment, although their arguments sort of go in both directions. So that's our best understanding of what his attorneys did in the first instance. But I'd also like to address what the state court actually held in this case. So I think my friend on the other side is right that the state court focused here on what Mr. Marling had shown, but I think that that only matters for purposes of the Fourth Amendment. It's only an accurate description of the factual world if you both agree that the policy here turns on actual damage and that the photograph doesn't show actual damage. I mean, there's a couple of reasons for that. So, you know, of course, when the state court is talking about whether Mr. Marling has pointed to sufficient evidence, it's talking about evidence of damage. And that doesn't answer the Fourth Amendment question unless the policy also turns on actual damage, which as we've said in our briefing, it does not. And secondarily, we know under 2254 D2 that what matters is the evidence presented to the state court. And the photographic evidence was presented to the state court in a number of different ways. It was presented, of course, in the state's briefing. It was cited several times to the point that the state court itself even cited the photograph in its factual background. And it was also cited by Mr. Marling in a petition for rehearing, which sort of more centrally emphasized the photograph and how it advanced his Fourth Amendment argument. Counsel, you have two minutes left. Thank you, Your Honor. And I think the reason why the photograph didn't play a central role in his initial submissions is that his argument has always been that it's the officer's methodology that violated the policy, not necessarily the actual damage that resulted from the search. Ms. Jones, it's Judge Scudder. Let me ask you. It's Judge Scudder. Let me ask you a question about that. The hard thing, I understand your argument just fine. You know, your brief is well done, written very well. We appreciate that very much. The hard part that I have with the substance of it is it's hard for me to see how using a screwdriver to open the lockbox here is an extreme measure or one that risks unreasonable potential property damage under this policy. I think your argument's much better if you were talking about the use of, you know, a crowbar that they drilled the top off this box that, you know, they used an explosive device or something like that. But, I mean, to use a screwdriver to just jimmy this box open, I just kind of think, well, okay. How is any of that unreasonable? Your Honor, I don't disagree that we can imagine sort of more destructive methods of opening a closed container. But I still don't think that that helps answer whether the use of a screwdriver on a lock that is affixed to the container and that, of course, is designed to sort of make the box useful in the first instance is the type of search that entails unreasonable potential damage. And I do think the fact that the photograph shows actual damage is fairly good evidence that the method in the first instance entailed the unreasonable potential for damage. If the court has no further questions, my time has expired, but we ask that the court affirm the district court's judgment in this case. Thank you, Ms. Jones. Anything further, Mr. Banks? Just briefly, Your Honor, to the extent that my colleague on the other side's argument about Indiana Court of Appeals making an unreasonable factual finding, because while it may not have found that there was actual damage, but it's kind of opinion-centered on that, that was an argument that even the district court rejected in this case. It said in a footnote that while that approach may have been, quote, misguided, but it's true in the vast majority of cases that actual potential damage and unreasonable potential damage would be very similar. So to the extent that the argument to relieve deference under 2254 relies on that alternative basis, I think that's also been rejected and should be rejected again. But other than that, we ask that you reverse the grant of payments relief. Thank you very much. Ms. Jones, the court appreciates your willingness and that of your law firm to accept the appointment in this case, and your assistance to the court as well as your client. This case is taken under advisement and the court will be in recess.